UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE LOVERSO, | ) | CIVIL ACTION NO. 4:21-CV-2110 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiff Nicole Loverso, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g). The parties have consented to have a Magistrate Judge conduct all proceedings in this case. (Doc. 8).

After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED and this case is REMANDED for further proceedings.

## II.    BACKGROUND & PROCEDURAL HISTORY

On March 8, 2016, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 12; Doc. 10-2, p. 13).  In this application, Plaintiff alleged she became disabled on August 24, 2015, when she was 42 years old, due to the following conditions: spinal fusion, spondylosis, degenerative disc disease, and anxiety. (Admin. Tr. 162; Doc. 10-6, p. 5). In her 2016 application, Plaintiff alleged that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. (Admin. Tr. 191; Doc. 10-6, p. 34). Plaintiff earned her GED. (Admin. Tr. 163; Doc. 10-6, p. 6).

On July 7, 2016, Plaintiff's 2016 application was denied at the initial level of administrative review. (Admin. Tr. 12; Doc. 10-2, p. 13). On July 29, 2016, Plaintiff requested an administrative hearing. *Id*.

On December 8, 2017, Plaintiff, represented by counsel, appeared and testified during a hearing before Administrative Law Judge Charles A. Dominick ("ALJ Dominick"). (Admin. Tr. 12, 23; Doc. 10-2, pp. 13, 24). On December 26, 2017, ALJ Dominick issued a decision denying Plaintiff's 2016 application for benefits. (Admin. Tr. 23; Doc. 10-2, p. 24). On December 29, 2017, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and

Review ("Appeals Council") review ALJ Dominick's decision. (Admin. Tr. 5; Doc. 10-2, p. 6). On October 16, 2018, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 10-2, p. 2).

On December 13, 2018, Plaintiff appealed the denial of her 2016 application to the district court.  (Admin. Tr. 622-623; Doc. 10-9, pp. 2-3). In the complaint, Plaintiff alleged, among other things, that ALJ Dominick had not been constitutionally appointed. *Id.* On April 29, 2020, the case was remanded to the Commissioner to conduct a new administrative hearing before a different, constitutionally appointed, ALJ. (Admin. Tr. 671-672; Doc. 10-9, pp. 51-52).

Before the 2016 application was remanded, Plaintiff filed a new application for disability insurance benefits under Title II on January 3, 2019 ("2019 application"). (Admin. Tr. 544; Doc. 10-8, p. 5). In the 2019 application, Plaintiff alleges that she was unable to work because of the following conditions: thoracic, lower back, sciatic pain; degeneration of lumbosacral intervertebral disc; neck, shoulder, knee, feet, ankle pain; lumbar radiculopathy; hernia; myomatous uterus; diverticulosis; pelvic congestion syndrome; IBSD; and high blood pressure. (Admin. Tr. 897; Doc. 10-12, p. 10). On March 25, 2019, the 2019 application was denied at the initial level of review. (Admin. Tr. 657; Doc. 10-9, p. 37). On December 24, 2019, Administrative Law Judge Jarrod Tranguch (the "ALJ") issued a decision denying the 2019 application. *Id.* Plaintiff requested Appeals Council review of the

decision denying the 2019 application. On September 9, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 682; Doc. 10-9, p. 62).

Upon the District Court's remand of the 2016 application, the Appeals Council remanded the 2016 application and re-opened and remanded the 2019 application to the ALJ. (Admin. Tr. 544; Doc. 10-8, p. 5). Those two applications were assigned to ALJ Tranguch for a new hearing.

On June 15, 2021, Plaintiff appeared for a brief telephone hearing. Only procedural matters were discussed, and no substantive testimony was presented. (Admin. Tr. 569-585; Doc. 10-8, pp. 31-47). On September 9, 2021, Plaintiff, having waived representation, appeared for a second telephone hearing before the ALJ. (Admin. Tr. 586 – 620; Doc. 10-8, pp. 47- 82).

On October 14, 2021, the ALJ issued the most recent ALJ decision denying Plaintiff's 2016 and 2019 applications for benefits. (Admin. Tr. 541-567; Doc. 10-8, pp. 2-28).

On December 16, 2021, Plaintiff filed this complaint in the district court seeking remand for what would be a fourth hearing. (Doc. 1).[1]

---

[1] The Complaint only seeks "…a judgement for such relief as may be proper." The complaint does not state why the ALJ Decision was improper, only that it was "adverse." (Doc. 1). However, in Plaintiff's Brief "Plaintiff respectfully submits that the Court should enter judgment under sentence four of 42 U.S.C. §405(g), reversing the Agency's final decision with a remand for a rehearing, i.e., for further

On March 7, 2022, the Commissioner filed an answer. (Doc. 9). In the answer, the Commissioner maintains that the decision denying Plaintiff's applications was made in accordance with the law and is supported by substantial evidence. (Doc. 9, p. 2). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 10).

Plaintiff's Brief (Doc. 13) and the Commissioner's Brief (Doc. 14) have been filed.  Plaintiff did not file a reply brief. This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[2] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence is

administrative proceedings." (Doc. 13, p. 23). Plaintiff does not seek an award of benefits at the District Court level.

[2] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[3] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

less than a preponderance of the evidence but more than a mere scintilla.[4] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[5] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[6] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[7]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It

---

[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[5] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[6] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[7] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[8]

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[9] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[10]

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

---

[8] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[9] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[10] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[11]

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[12] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[13] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under

---

[11] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[12] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[13] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

retirement age, and became disabled prior to the date on which he or she was last insured.[14]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[15] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[16]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[17] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[18]

---

[14] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[15] 20 C.F.R. § 404.1520(a).

[16] 20 C.F.R. § 404.1520(a)(4).

[17] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[18] 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[19]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[20]

## IV.   DISCUSSION

Plaintiff raised the following issue in her statement of errors:

1.   The ALJ failed to "probe into, inquire of, and explore all the relevant facts" regarding Plaintiff's self-described limitations from her pain, resulting in an RFC finding that does not accurately reflect all of her impairments.

(Doc. 13, p. 3).

We will begin our analysis by summarizing the ALJ's findings, and then will address Plaintiff's argument.

---

[19]42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a); *Mason*, 994 F.2d at 1064.

[20] 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his October 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through June 30, 2021.[21] (Admin. Tr. 547-48; Doc. 10-8, pp. 8-9). Then, Plaintiff's Title II applications were evaluated at steps one through four of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between August 24, 2015 (Plaintiff's alleged onset date), and June 30, 2021 (Plaintiff's date last insured) ("the relevant period"). *Id.*

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments:  degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine status post laminectomy and fusion; and hernia status post-surgical repair. *Id.* The ALJ also found that Plaintiff's anxiety was medically determinable, but non-severe. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled

---

[21] At the June 15, 2021, hearing the ALJ told the Plaintiff that her last date of insured was December 31, 2020. (Admin. Tr. 572; Doc. 10-8, p. 33). The ALJ repeated the December 31, 2020, date again at the September 9, 2021, hearing. (Admin. Tr. 588; Doc. 10-8, p. 49). Plaintiff earned four qualifying quarters every year from 1996 to June 30, 2016. (Admin. Tr. 870-71; Doc. 10-11, pp. 11-12). Her alleged onset date is August 24, 2015. The result in this case would be the same whichever date is the date last insured.

the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Admin. Tr. 549; Doc. 10-8, p. 10).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) except that:

> The claimant can occasionally push and/or pull with the upper and lower extremities, such as operating levers, hand controls, pedals, and foot control. Further she can occasionally stoop, crouch, kneel, use ramps, and climb stair, and can perform jobs that do not require balancing, crawling, or climbing on ladders, ropes, or scaffolding. Additionally she can reach overhead occasionally. Lastly, she can tolerate occasional exposure to vibrations, and can perform jobs that do not require exposure to wet or slippery conditions or other workplace hazards such as unprotected heights and dangerous and moving machinery.

(Admin. Tr. 550; Doc. 10-8, p. 11).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in her past relevant work as an administrative assistant (DOT# 169.167-010), which is a sedentary, skilled position as generally performed, and as a senior production assistant (DOT# 221.382-018), which is a sedentary, semi-skilled position as generally performed and as actually performed. (Admin. Tr. 557; Doc. 10-8, p. 18). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing. (Admin. Tr. 558; Doc. 10-8, p. 19). The ALJ also determined that, given Plaintiff's age, education, work

experience, and RFC, Plaintiff could perform other jobs that existed in significant numbers in the national economy, such as order clerk (DOT# 209.567-014), credit checker (DOT# 237.367-014), lens inserter (DOT# 713.687-026), each of which are sedentary, unskilled positions with at least 27,112 jobs in the national economy.

The ALJ then concluded Plaintiff was not under a disability at any time from August 24, 2015, the alleged onset date, through June 30, 2021, the date last insured. (Admin. Tr. 559; Doc. 10-8, p. 20).

### B.   SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S DECISION

In this case, the following medical sources issued opinions: Dr. Stephen P. Falatyn (treating source), Dr. Allister R. Williams (treating source), Dr. Lawrence Schaffzin (state agency consultant), and Dr. Kevin Wood (treating non-acceptable medical source). The ALJ gave "no," "limited," or "little" weight to each opinion.

No weight was given to opinions that Plaintiff was "out of work" by Dr. Falatyn and Dr. Williams. (Doc. 554; Doc. 10-8, p. 15). The ALJ discounted these opinions pursuant to 20 C.F.R. § 404.1527(d), which explains that medical source statements on issues reserved to the Commissioner—like statements that a claimant cannot work—are not entitled to any special significance.

In addition to notes that Plaintiff would be "out of work," Dr. Williams also completed two functional capacity assessments. In both assessments, Dr. Williams assessed that Plaintiff's severe back and neck pain would result in physical

limitations consistent with less than sedentary work. In the first opinion, he assessed that Plaintiff could: sit for two hours per eight-hour workday; stand/walk for less than two hours per eight hour workday; occasionally lift and carry less than ten pounds; occasionally climb stairs; and never twist, stoop, crouch, or climb ladders. He also opined that Plaintiff would need frequent unscheduled breaks, would occasionally need to use a cane, would be off task 25% of each workday, and would be absent more than four days per month. (Admin. Tr. 434-438; Doc. 10-7, pp. 203-207). In the second opinion he included additional limitations to Plaintiff's ability to sit. (Admin. Tr. 1217-1221; Doc. 10-13, pp. 238-242).

The ALJ gave "little" weight to Dr. Williams's first assessment and "limited" weight to his second. Although he addressed each opinion separately in the decision, the ALJ's reasoning for discounting these opinions was almost identical. The ALJ explained:

> To the extent the doctor's opinion supports that the claimant is capable of doing sedentary work, his opinion is consistent with, and supported by, the longitudinal record, in all other aspects it is not consistent with or supported by the longitudinal record. Specifically, while the claimant had lumbar surgery in December 2015, her examination thereafter consistently note no atrophy, no edema, and no clubbing clonus, or cyanosis. Also, the positive finding are noted to fluctuate, in that while there are some examinations noting pain with lumbar range of motion, positive straight leg raise testing, and some cervical and lumbar tenderness, while other examinations reflect normal findings. Moreover, the post-surgery diagnostics, notably the lumbar x-rays and MRIs, cervical MRIs and x-rays, the thoracic MRI and the EMG/NCS tests do not support these findings. Additionally, there is nothing in the

record to support the doctors finding that the claimant will be off task
25% of the workday or miss 4 or more days from work a month with
the physical examination findings and diagnostic testing is considered.
Lastly, as there is no indication that the claimant needs to utilize a cane
for walking in the record, the doctor's notation of the need for one is
not supported by the record. For these reasons, the doctor's opinion is
given limited weight.

(Admin. Tr. 555; Doc. 10-8, p. 16).

Like Dr. Williams, Dr. Wood also assessed that Plaintiff had limitations that
are consistent with less than sedentary work. (Admin. Tr. 1759-1761; Doc. 10-13,
pp. 780-782). He opined that Plaintiff could stand for one hour in a day, walk for
two hours in a day, sit for one hour in a day, occasionally lift and carry less than ten
pounds, occasionally bend, and never squat, crawl, climb, or balance. The ALJ gave
"little" weight to Dr. Wood's opinion for the same reasons Dr. Williams's opinions
were discounted. (Doc. 556; Doc. 10-8, p. 17).

Dr. Schaffzin assessed that Plaintiff had limitations consistent with the
performance of a range of light work. (Admin. Tr. 645-648; Doc. 10-9, pp. 26-28).
In addition, he limited Plaintiff to occasional climbing ladders, climbing ropes,
climbing scaffolds, stooping and crouching, and frequent crawling. He assessed that
Plaintiff should avoid exposure to extreme heat, humidity, fumes, odors, dusts,
gases, poor ventilation, and hazards. The ALJ gave "little" weight to this assessment,
reasoning that it was an overestimate of Plaintiff's capabilities, and included

unnecessary environmental limitations. (Admin. Tr. 555; Doc. 10-8, p. 16). In support of this reasoning the ALJ explained:

> For instance, when the claimant's lumbar surgery in December of 2015, and her post-surgery examinations are considered, reflecting fluctuating limited range of motion, tenderness, straight leg testing, and a gait shifting between normal and antalgic, as well as the post-surgical lumbar x-rays and MRIs, and the cervical x-rays and MRIs, along with the claimant's testimony and complaints, the undersigned finds that the record supports limiting the claimant to sedentary work with the foregoing limitations. That said, there is nothing in the record to support the heat, humidity, and pulmonary environmental limitations the doctor assessed.

(Admin. Tr. 556; Doc. 10-8, p. 17).

In her brief, Plaintiff alleges that that ALJ's decision is not supported by substantial evidence because the ALJ failed to analyze "other evidence" including the opinions of medical sources and only selectively reviewed the objective medical evidence and Plaintiff's activities of daily living. (Doc. 13, p. 7-9). Plaintiff argues:

> [C]ontrary to the ALJ's assertion, the objective medical evidence also supports Plaintiff's description of the intensity, persistence, and limiting effects of her symptoms. In fact, the ALJ's own discussion of the objective evidence belies his conclusion. Up until his "punchline" finding on page 14 of his decision, Tr. 557, announcing that Plaintiff's application for benefits was denied, the ALJ's analysis of the record reads very much like a favorable decision. The ALJ recognized that positive exam findings and imaging led to spinal fusion surgery in December 2015 Tr. 551. He conceded subsequent "examinations note positive Patrick Faber tests, positive distraction tests, positive straight leg raise tests, reduced cervical and lumbar range of motion, cervical and lumbar spasm, cervical and lumbar tenderness, tenderness in the left shoulder and bilateral hips, reduced strength, decreased sensation, positive Tinel's sign bilaterally, reduced right hip range of motion and

a positive left shoulder impingement sign…" Tr. 552. He
acknowledged findings of antalgic gait. *Id.* He recognized MRI
findings and x-rays from June 2016 through July 2020 showed canal
and foraminal stenosis, disc herniation, narrowing at C5-C6, C6-C7,
cervical diffuse degenerative changes, presumed bilateral L5
spondylolysis, Grade 1 spondylolisthesis, and thin lucent halos
surrounding the screws bilaterally at L5 and S1, mild multilevel
degenerative changes, as well as the posterior instrumented fusion at
L5-S1 and grade 1/2 anterolisthesis, and an approximately 2-3 mm
increased retrolisthesis C4 on C5 with extension. Tr. 551; 552; 553.
Although the ALJ's recitation does generally refer to non-specific
normal exam findings and imaging other than this, his own description
of the evidence is consistent with Plaintiff's description of limitations
related to persistent, severe pain.

(Doc. 13, pp. 9-10). Plaintiff next alleges that that ALJ's decision is not supported

by substantial evidence because the "ALJ rejected *every* medical opinion[,]

assigning each little or no weight," causing "his interpretation of the objective

evidence" to be mere "lay analysis." (Doc. 13, p. 10). Plaintiff argues:

The ALJ assigned "little weight" to both [treating physician] opinions,
asserting that each was "not consistent with or supported by
longitudinal record." Tr. 554; 555. The ALJ identified "no atrophy, no
edema, and no clubbing, clonus, or cyanosis" as findings not supporting
these opinions. *Id.* Yet the ALJ failed to explain why the lack of these
specific findings undermined the opinions considering the plethora of
positive exam findings in the record. The ALJ conceded the "positive
findings…noting pain with lumbar range of motion, positive straight
leg raise testing, and some cervical and lumbar tenderness," in the
record, but dismissed these observing there was fluctuation in these
findings. *Id.* But, of course, such a rationale is improperly highly
selective, emphasizing the evidence demonstrating "waning", while
failing to acknowledge the significance of evidence describing
"waxing." There is no nexus or "logical bridge" between the negative
findings the ALJ identified and the rejection of Dr. Williams' opinions.
Merely identifying some negative findings in a record containing both

negative and positive findings does not allow for meaningful review. An ALJ must "do more than acknowledge such inconsistent evidence he must identify conflicting records with specificity and provide reasons for crediting certain objective clinical findings over others." *Batdorf v. Colvin*, 2016 U.S. Dist. LEXIS 114374, at* 27 (M.D. Pa. Aug. 26, 2016).

Nor is there any indication the ALJ even considered that the regulations favor the opinions of treating sources. *See* §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence…") In fact, the regulations unambiguously require that "[w]hen the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." §404.1527(c)(2)(ii) (emphasis added). The ALJ did not identify Dr. Williams as a treating source, no less Plaintiff's treating surgeon, and there can be no dispute, as such, he has a "reasonable knowledge" of Plaintiff's impairments. The ALJ never even acknowledged the extent of the relationship, since October 2015, Tr. 69, contrary to the clear statement that "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." §404.1527(c)(2)(i) (emphasis added). Or his preferred status as a medical specialist. See §404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.")

In sum, the ALJ rejected both treating opinions consistent with Plaintiff's self-described limitations without analyzing many factors the regulations stringently require be considered. The evidence also supports the opinions, and perhaps most importantly, does not reasonably or logically support the ALJ's conclusion that the record is inconsistent with the opinions.

(Doc. 13, pp. 12-14). Plaintiff also alleges that that the ALJ failed to evaluate the "other evidence" factors which the ALJ is required to evaluate under 20 C.F.R. § 404.1529(c)(3), including some of Plaintiff's alleged daily activities; the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and other measures used to relieve pain. (Doc. 13, pp. 14-20).

In response, the Commissioner contends that the RFC is supported by substantial evidence and that the ALJ followed the applicable regulations, (Doc. 14, pp. 11-13). The Commissioner argues that, regarding the objective medical evidence, the ALJ correctly explained that the objective signs and findings were not particularly adverse and supported his findings with the following objective medical evidence. (Doc. 14, pp. 11-15). The Commissioner states:

> Although some examinations noted positive Patrick Faber tests, positive distraction tests, positive straight leg raise tests, reduced cervical and lumbar range of motion, cervical and lumbar spasm, cervical and lumbar tenderness, tenderness in the left shoulder and bilateral hips, reduced strength, decreased sensation, positive Tinel's sign bilaterally, reduced right hip range of motion and a positive left shoulder impingement sign, many of these findings were not consistent (Tr. 552, citing Tr. 254, 500, 1232, 1241, 1354, 1470);
>
> For example, many findings were consistently negative on examinations and showed no cervical or lumbar tenderness, negative straight leg raise tests, full range of cervical and lumbar motion, normal sensation, and normal strength as well as no clonus, normal reflexes, no clubbing, no cyanosis, no edema, no atrophy, no peripheral edema, negative femoral nerve stress tests bilaterally, and negative Hoffman

and Spurling's signs (Tr. 552, citing Tr. 342, 374, 379, 383, 385, 385, 389, 473, 479-80, 482-83, 496, 499, 502, 506, 512, 515, 524, 527, 530, 1308, 1312, 1337, 1357-58, 1470);

Although a few examinations noted an antalgic gait (e.g., Tr. 524, 530, 1232), for the large part Plaintiff's gait was normal (e.g., Tr. 552 264, 506, 521, 527, 1566); and

Regardless of whether Plaintiff's gait was noted to be antalgic or normal, there was no indication of any assistive devices being used (Tr. 552; see, e.g., Tr. 264, 269, 312).

(Doc. 14, pp. 14-15). The Commissioner also contends that Plaintiff errs in alleging that the evidence supports Plaintiff's statements of her symptoms, that the ALJ correctly assigned little weight to Dr. Williams's opinions, that the ALJ recognized that Dr. Williams was a treating physician because the ALJ discussed Dr. Williams's treatment records when reviewing the evidence, and that the ALJ discussed the location and duration of Plaintiff's pain.  (Doc. 14, pp. 19-25).

We will first address Plaintiff's allegations that the RFC determination is not supported by substantial evidence because the ALJ did not give proper preference to a well-supported treating physician opinion and because the ALJ rejected all medical opinions in the record, necessarily relying upon lay interpretation of evidence.

It is the ALJ's duty to assess a claimant's RFC and the ALJ must consider all of the evidence, not only the medical opinions of record.[22] For claims filed before March 27, 2017, like this one, the ALJ assigns the weight he or she gives to a medical opinion.[23] If "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments [are] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the claimant's] case record," the ALJ "will give it controlling weight."[24] Where, as here, the ALJ does not give a treating source's medical opinion controlling weight, the ALJ analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors.[25]

---

[22] 20 C.F.R. §§ 404.1512(b), 404.1545(a)(3), 404.1546(c); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.").

[23] 20 C.F.R. § 404.1527(c).

[24] 20 C.F.R. § 404.1527(c)(2).

[25] 20 C.F.R. § 404.1527(c)(2)–(c)(6).

The ALJ states that after the 2015 surgery Plaintiff's examinations consistently note "no clonus, normal reflexes, no clubbing, cyanosis, or edema, no atrophy, no peripheral edema, negative femoral nerve stress tests bilaterally, and negative Hoffman and Spurling's signs." (Doc. 10-8, p. 13; Admin. Tr. 552). The ALJ does not explain why the absence of these symptoms is relevant or contradictory to Dr. Williams's opinions which were consistent in 2017 and 2019 and contained detailed, severe limitations to Plaintiff's daily activities and ability to perform consistently on a regular basis. This is especially important because there are no medical opinions in the record that support Plaintiff's ability to perform consistently and without the severe limitations indicated by Dr. Williams.

An ALJ may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation, "amorphous impressions, gleaned from the record," or lay opinion.[26] When rejecting treating physician opinions, "an ALJ may not make 'speculative inferences from medical reports.'"[27] The Third Circuit specifically rejected cherry-picked treatment notes and credibility assessments alone as substantial evidence for discrediting a medical opinion.[28] "In the Third Circuit, an

---

[26] *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (citations omitted).

[27] *Id.* at 317.

[28] *Id.*

ALJ may not reject a supported treating source medical opinion with only lay interpretation of medical evidence. ALJs must also give special deference to medical opinions from treating physicians and require good reasons to reject them in favor of evidence from non-treating sources . . . ."[29] "[M]erely citing to contradictory medical evidence, as opposed to contradictory medical opinion, is insufficient."[30] In *Ferguson v. Schweiker*, 765 F.2d 31 (3d Cir. 1985), the Third Circuit found that an ALJ acted improperly and "impermissibly substituted his own judgment for that of a physician" where the ALJ rejected the treating physician's opinion, instead relying upon the claimant's a lack of "end-organ damage," "control of the condition by medication," objective evidence indicating only "non-specific EKG findings," "'mild' arthritis," and failure to see a specialist for certain problems to find the claimant not disabled.[31] The Third Circuit stated: "[I]f the ALJ believed that [the treating physician's] reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician."[32] To discredit the opinion of a treating physician under the applicable regulations, an ALJ must

---

[29] *Burns v. Colvin*, 156 F. Supp. 3d 579, 588–90 (M.D. Pa. 2016) (collecting cases decided by the Third Circuit Court of Appeals).

[30] *Burns*, 156 F. Supp. 3d 579, 588–90 (M.D. Pa. 2016) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)).

[31] *Id.* at 588 (citing *Ferguson*, 765 F.2d at 37).

[32] *Ferguson*, 765 F.2d at 37.

wholistically review the treatment notes and also rely upon an opinion by another medical source.[33]

In Social Security cases, ALJs are permitted to find *more restrictive* RFCs than medical opinions indicate but not *less restrictive* RFCs than indicated in the medical opinions.[34] In the Third Circuit, an RFC assessment is not supported by substantial evidence where an ALJ finds a lesser degree of limitation—a greater degree of ability—than opined by any medical professional without other evidence that supports the ALJ's RFC determination.[35] And where no medical opinion was

---

[33] *Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005).

[34] See *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361-63 (3d Cir. 2011) (declining to remand because the ALJ's RFC determination was more restrictive than suggested by a persuasive medical opinion); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) (affirming the ALJ's decision because the ALJ created a more limited RFC than indicated by the medical opinion); *Metzgar v. Colvin*, No. 3:16-CV-1929, 2017 WL 1483328 (M.D. Pa. Mar. 29, 2017) (emphasis in original), *report and recommendation adopted* 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017) ("[W]hen an ALJ is saying that a claimant can do more than the medical source opinion states, courts exercise caution and suggest that only rarely can an ALJ unilaterally impose an RFC on a claimant that is less restrictive than the residual functional capacity found by the medical professional.").

[35] *See Doak v. Heckler*, 790 F.2d 26, 26-29 (3d Cir. 1986); *Decker v. Berryhill*, No. 1:17-CV-00945, 2018 WL 4189662, at *4-6, (M.D. Pa. June 8, 2018), *report and recommendation adopted*, No. 1:17-CV-945, 2018 WL 4184304 (M.D. Pa. Aug. 31, 2018) (listing cases); *see McKean v. Colvin*, 150 F. Supp. 3d 406, 418 (M.D. Pa. 2015).

found credible by the ALJ, the ALJ can rarely form an RFC supported by substantial evidence.[36]

Here, the ALJ rejected the opinions of Dr. Williams dated May 17, 2017, and May 9, 2019, to the extent that they would lead to a conclusion of disability.[37] In both medical opinions, Dr. Williams limited Plaintiff to two or fewer hours each of standing, sitting, and walking during an eight-hour workday and indicated Plaintiff would need "frequent unscheduled breaks" throughout the workday. (Admin. Tr. 554-55; Doc. 10-8, pp. 15-16). Dr. Williams also twice opined that Plaintiff may sometimes need a cane to ambulate and limited Plaintiff's lifting and carrying to less than ten pounds occasionally. *Id*. Finally, Dr. Williams opined each time that Plaintiff's reaching was limited both in front and overhead and that Plaintiff would be off task 25% or more of each workday and would miss four or more days of work each month. *Id*. In rejecting each opinion, the ALJ relied upon a lack of atrophy, edema, clubbing, clonus, and cyanosis after surgery, as well as a normal range of motion, negative straight leg raise testing, and lack of tenderness on some but not all

---

[36] *McKean*, 150 F. Supp. 3d at 418 ("Rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant.").

[37] (Admin. Tr. 555; Doc. 10-8, p. 16) ("To the extent that the doctor's opinion supports that the claimant is capable of doing sedentary work, his opinion is consistent with, and supported by the longitudinal record, in all other aspects it is not consistent with or supported by the longitudinal record.").

examinations after surgery. *Id*. Finally, the ALJ states without citation to any specific evidence that "the cervical, thoracic, and lumbar MRIs, the cervical and lumbar x-rays, and the EMG/NCS studies do not support" Dr. Williams's opinions and that there is no support in the record for off-task behavior 25% of the time, missing more than four workdays per month, or cane use. (Admin. Tr. 555; Doc. 10-8, p. 16).

In the ALJ's rejection of Dr. Williams's opinions, the ALJ has not cited to any facts or medical findings regarding imaging or other studies by medical professionals. (Admin. Tr. 552; Doc. 10-8, p. 13). Therefore, the ALJ can, at best, refer to the earlier overviews of the imaging and studies, which can be summarized thusly: The ALJ found that the imaging indicated that Plaintiff's cervical, thoracic, and lumbar spine were imperfect but not worse than a spine suited to the RFC found by the ALJ. (Admin. Tr. 552-53; Doc. 10-8, pp. 13-14). The ALJ does not rely upon any medical opinion in finding Plaintiff's spine to be only as bad as the ALJ states. *Id*.

In hypothetical question two the VE was asked if the Plaintiff had to change positions every 30 minutes would there be jobs in the national economy. The VE said yes. (Doc. 10-8, p. 78). But in hypothetical question three when asked if the plaintiff had to change positions every 5 minutes would there be jobs in the national economy the VE answered "No." (Doc. 10-8, p. 79). When asked if the hypothetical

employee was off task 20% of the workday or had to leave early 2 days per month, the VE again said, "no jobs." (Doc. 10-8, p. 79).  These hypothetical questions are supported by the multiple reports of Dr. Williams and Dr. Wood and the statement from Plaintiff (Ex. 29E) and her live-in girlfriend (Ex. 30E).  The ALJ mentions the "longitudinal record" seven times, but the ALJ does not explain why these reports are not also a part of the "longitudinal record" that he claims support a less restrictive finding.

In rejecting Dr. Williams's opinions, the ALJ expressly relies upon his own review of the medical record and of the cervical, thoracic, and lumbar MRIs, the cervical and lumbar x-rays, and the EMG/NCS studies. Furthermore, when rejecting Dr. Williams's opinions, the ALJ was unable to rely upon any other medical opinions in the record because the ALJ rejected all of the other opinions as having "little weight." The ALJ stated that the only other medical opinion, in which Dr. Schaffzin found a much less restrictive RFC, was given "little weight" because Dr. Schaffzin's medical opinion was "an overestimate of the claimant's abilities, and also include[d] unsupported limitations." (Admin. Tr. 556; Doc. 10-8, p. 17). Therefore, the ALJ, in rejecting the treating physician's opinions, had no medical opinion to support the ALJ's findings of "little" and "limited" weight. The ALJ, therefore, necessarily relied upon his own lay interpretation of the evidence, which is impermissible under the applicable regulations.

Because the ALJ assigned little weight to the treating physician's medical opinions without support by any other medical opinion, the ALJ's decision is not supported by substantial evidence and is therefore vacated. Because the Commissioner's decision must be vacated and the case remanded, Plaintiff's remaining claims of error will not be addressed. We note, however, that the ALJ failed to take into account the significant amount of pain medication and pain remediation that Plaintiff engaged in after her spinal surgery. Since those pain management regimens were all proscribed and continued for multiple years they certainly must be evidence of the severity and persistence of the Plaintiff's pain levels, supporting the doctor's conclusion that she would be off task frequently and miss multiple days of work per month. However, since "a remand may produce different results on these claims, making discussion of them moot."[38]

[The next page contains the Conclusion]

---

[38] *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).

## V.     CONCLUSION

Accordingly, I find that Plaintiff's request for remand is Granted as follows:

(1)     The final decision of the Commissioner is VACATED.

(2)     This case is REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)     Final judgment will be issued in favor of Nicole Loverso.

(4)     Appropriate Orders will be issued.


Date: March 29, 2023                              BY THE COURT

                                                  *s/William I. Arbuckle*
                                                  William I. Arbuckle
                                                  U.S. Magistrate Judge